JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Anthony W. Nestico, Adrian M. Nestico and Anthony W. Nestico, Jr.

**(b)** County of Residence of First Listed Plaintiff    Northumberland
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

William R. Caroselli
20 Stanwix Street, 7th Floor
Pittsburgh, PA 15222    (412) 391-9860

## DEFENDANTS

Sunoco Logistics Partners, L.P. and Sunoco Pipeline, L.P.

County of Residence of First Listed Defendant    Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
  Plaintiff

☒ 3  Federal Question
  *(U.S. Government Not a Party)*

☐ 2  U.S. Government
  Defendant

☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☒ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. sec.6901, et seq    42 U.S.C. sec. 1311

Brief description of cause:
Citizens suit under RCRA and the CWA

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY W. NESTICO,
ADRIAN M. NESTICO AND
ANTHONY W.  NESTICO,  JR.,

    PLAINTIFFS

        vs.

SUNOCO LOGISTICS PARTNERS, L.P. and
SUNOCO PIPELINE, L.P. ,

    DEFENDANTS

No.:

## COMPLAINT

---

## INTRODUCTION

AND NOW, comes the Plaintiffs, Anthony W. Nestico, Adrian M. Nestico and Anthony W. Nestico, Jr. by and through their attorneys William R. Caroselli  and Caroselli, Beachler, McTiernan and Conboy, LLC and files the following Complaint and avers as follows:

1.      This is a citizens' suit, brought under section 6 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. Sec. 6972(a), section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, AND Section 601(c) of the Pennsylvania Clean Streams Law (CLS) 35 Pa CSA 691.601. Plaintiff seeks declaratory and injunctive relief and the award of costs, including attorney and expert witness fees, for the Defendants' discharge of gasoline and/or other Petroleum Products into the environment and the waters of the Commonwealth of Pennsylvania without a permit in violation of section 301 (a) of the CWA, 33 U.S.C. § 1311 (a), and section

691.301 of the ("CSL"), 35 P.S. § 691.301 and Defendants' violation of RCRA 42 U.S.C.   6901 et seq. and for Defendants' repeated and continuing violations.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. §6972(a) of RCRA section 33 U.S.C. § 1365(a)(1) of the CWA and 35 Pa. State Ann. §691.601(c), of the CSL .

3.      Pursuant to section 42 U.S.C. § 6972(a), 33 U.S.C. §1311(a), and 35 Pa. C.S.A. §691.601(c) Plaintiffs gave notice to the Defendants, of the violations alleged in this complaint, and their intent to file suit, on April 9, 2014, prior to commencement of this lawsuit.   A copy of the notice letter is attached as Exhibit A and incorporated herein.

4.      More than 90 days have passed since notice was served.   The violations complained of therein have not ceased.   Neither the Defendants nor the Pennsylvania Department of Environmental Protection (Pa. DEP)   have commenced and diligently prosecuted a court action to redress the violations.

5.      Venue is proper in the Middle District of Pennsylvania pursuant to the CWA, 33 U.S.C. § 1365(c)(l) and RCRA, 42 U.S.C. Sec. 6972(a)(2), because the source of the violations complained of is located within this District.

## PARTIES

6.      Defendant, Sunoco Logistics Partners, L.P. ("Sunoco-Logistics") is a foreign limited Partnership doing business in Pennsylvania with a local mailing address of 5733 Twin Oaks Terminal, 4041 Market Street, Aston, Pennsylvania.

7.      Defendant, Sunoco Pipeline, L.P. ("Sunoco-Pipeline") is a   foreign limited Partnership doing business in Pennsylvania with a local mailing addresses of 525 Fritztown Road,

Sinking Spring, Pennsylvania 19608, and 9110 Broad Mountain Road, Shippensburg, Pennsylvania 17257.

8.     Plaintiff Adrian M. Nestico, resides at 801 Stevens Street, Coal Township, Northumberland County, Pennsylvania. Plaintiff, Anthony W. Nestico, reside at  6884 SR 61, Coal Township, Pennsylvania  17866.  Plaintiff, Anthony W. Nestico, Jr., resides at 38 Mifflin X Road, Nescopeck, Pennsylvania  18365.

9.     Plaintiffs, Anthony W. Nestico and Anthony W. Nestico, Jr. jointly own two parcels one is an 18.131acre at property identification number 00D-00-067-015, and the other is 17 acres at parcel I.D. No. 000D-00-067-147; Plaintiff Adrian M. Nestico owns a contiguous Parcel which is 311.00 acres at property identification number 00D-00-066-151; all three Plaintiffs own jointly  another 17 acre parcel located at 6884 SR 61, Coal Township, Pennsylvania 17866; Defendants Sunoco-Pipeline and Sunoco-Logistics own and operate a 14 inch petroleum transmission line installed on and across Plaintiff Adrian Nestico's property (hereinafter sometimes referred to as collectively "the subject properties.")

10.     On or around December 20, 2013, a release of unleaded gasoline and possibly other petroleum products was discovered to be discharging from Defendants' Pipeline located at or about 40.80216-76.60618 which is located on Plaintiff Adrian Nestico's property.  The discharge was reported in the 14-inch petroleum transmission line which runs through Plaintiffs' property in Coal Township, Northumberland County, Pennsylvania which, upon information and belief, released many thousands of gallons of gasoline into the surrounding environment and waters of the Commonwealth of Pennsylvania.

11.     Plaintiffs and other nearby residents receive their drinking water from a point directly downstream of the Defendants' discharge, and also participate in recreational activities in or around the release point and Eagle Run Stream. Consequently, the Plaintiffs' suffer from and

are at an increased risk of adverse health effects from exposure to gasoline and/or petroleum products and their toxic chemical constituents.

12.     The Plaintiffs have neighbors who live at 157 Happy Hollow Road, Coal Township, Pennsylvania 17866 and 178 Nesterick Road, Coal Township, Pennsylvania 17866 and who have suffered, and will continue to suffer, actual and threatened injury to their water supply and their health and welfare due to Defendants' violations of the CWA, CSL, and RCRA, as described herein. The Plaintiffs' are exposed to, and threatened with exposure to, or ingestion of, pollutants discharged from the Defendants' Pipeline.

13.     The Plaintiffs' have suffered, and will continue to suffer, actual and threatened interference with their use and enjoyment of property and surrounding areas from the violations alleged in this Complaint.

14.     The acts, omissions, and reckless conduct of the Defendants alleged herein subject Plaintiffs' and neighboring residents to harmful pollution that threatens their health and welfare, interferes with their use and enjoyment of waterways and surrounding areas, denies them protection of their health and well-being guaranteed by the CWA, CSL, and does and/or may present a substantial endangerment to health and the environment in violation of RCRA, and the Defendants' conduct, adversely impacts their aesthetic and recreational interests. The relief requested herein will redress these injuries.

## STATUTORY AND REGULATORY BACKGROUND

15.     The goal of the RCRA is to "promote the protection of health and the environment and the conserve valuable material and energy resources…" 42 U.S.C. Sec. 6902(a).

16.     Section 7002(a)(1)(B) of  the RCRA, 42 U.S.C. 6972(a)(1)(b), permits

commencement of a civil action against any "person…including any Past or present generator, Past or present owner or operator of a treatment, storage or disposal facility who has contributed or who is contributing to the Past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present imminent and substantial endangerment to health or the environment."

17.     The discharge, spilling and/or leaking of  the gasoline and/or other petroleum products from Defendants pipeline into the surrounding soil, rock and ground water created a "solid waste" as defined by 42 U.S.C. Sec. 6903 (27) and/or a "hazardous waste" as defined by 42 U.S.C. Sec. 6903(5).

18.     The Defendants are a "Past or present generator" and/or a "Past or present transporter" of a solid or hazardous waste, who has contributed or is contributing to the Past or present "handling" or "disposal" of said solid and/or hazardous waste as those words are understood and interpreted in the context of 42 U.S.C. 6972(a).

19.     The goal of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251 (a).

20.     Section 301(a) of the CWA, 33 U.S.C. § 131 l(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless in compliance with various enumerated sections of the CWA. Among other things, section 301 (a) prohibits such discharges not authorized by or in violation of the terms of a NPDES permit issued pursuant to section 402 of the CWA, 33 U.S.C. § 1342.

21.     Gasoline is a "pollutant" as defined by section of the CWA, and section 9.1 of the Rules and Regulations 25 Pa. Code 91.1.   Gasoline is also a "substance of any kind or character resulting in pollution" as that phrase is used in Section 401 of the CLS 35, PA CSA Section 691.401.   Additionally, a discharge of industrial wastes without a permit or contrary to the rules

and regulations of the Pa. DEP is defined to be a "nuisance".

22.    Under section 402(a)-(b) of the CWA, 33 U.S.C. § 1342(a)-(b), the Administrator of EPA has authorized the Pennsylvania DEP to issue NPDES permits. The applicable sister state Pennsylvania law is the Pennsylvania Clean Streams Law, Title 35 Pennsylvania Statutes § 691.1, *et seq.* Section 691.307 of the CSL, 35 P.S. § 691.307, prohibits the discharge of "industrial wastes" into the waters of the Commonwealth, unless such discharge is in compliance both with the terms and conditions of a permit issued by the Commonwealth, and with the rules, regulations, and orders of the Commonwealth.   At no time relevant to the facts and circumstances alleged herein did the Defendants have or obtain a permit allowing them to discharge "industrial wastes" into the waters of the Commonwealth relating to the operation of the pipeline.

23.    Gasoline and petroleum products are considered industrial waste under 35 P.S. § 691.1.

24.    Any citizen may commence a civil action against any person alleged to be in violation of "an effluent standard or limitation" enacted pursuant to the CWA 33 U.S.C. § 1365 and/or the state CLS.

25.    "Effluent standard or limitation" is defined to include unlawful acts under section 301(a) of the CWA; an effluent limitation under section 301 or 302 of the CWA; the terms and conditions of a NPDES permit issued pursuant to section 402 of the CWA; and prohibition, effluent standard or pretreatment standards under section 307 of the CWA 33 U.S.C. § 1365(f)(l),(2),(4),and(6).

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

26.    At all times mentioned herein, Plaintiffs are adult individuals residing in Coal

Township, Northumberland County, Pennsylvania.

27.     Defendants are upon information and belief are business entities engaged in the business of transporting, distributing and selling gasoline and other petroleum products in several states, including Northumberland County, Pennsylvania.

28.     Upon information and belief, Defendants own and operate Montello-Bald Eagle pipeline (Hereinafter the "Pipeline"), which is 14 inches in diameter and transports gasoline and/or other petroleum products from Sinking Spring, Pennsylvania to Buffalo, New York.

29.     At all times relevant hereto the Defendants, and their respective agents and/or employees and/or contractors have had control over and/or owned and operated the pipeline and the release site, since 1990 through an easement or right-of-way over the Plaintiff, Adrian Nestico's property; said easement and pipeline were acquired by Defendants' from their predecessor in title the Atlantic Pipeline Company, and/or Atlantic Richfield Company, who acquired the easement by eminent domain proceedings in the Court of Common Pleas of Northumberland County at Case No. 96 December Term 1964; who then upon information and belief, constructed the pipeline and began operating it shortly thereafter continuously until the Defendants purchased it in 1990.

30.     Upon information and belief the Pipeline pumps gasoline and/or other petroleum products at approximately 400 pounds per square inch of pressure (PSI), for twenty-four (24) hours a day, seven (7) days a week.

31.     The Pipeline runs through the subject property owned by Plaintiff, Adrian Nestico and the leak occurred on this portion of the subject property.

32.     The Plaintiff, Anthony W. Nestico has owned and lived on the contiguous Parcel consisting, aggregately of approximately forty-five (45) acres of land, since July, 1999.

33.     Plaintiffs purchased the subject properties in large Part because they were known

7

for their Pristine Woodlands and exceptionally pure mountain spring water, as evidenced by the historical Eagle Run Brewery subsequently known as F & S Bewery, which operated on Plaintiffs' property for many years in the late 1800s through the Mid 1900's..

34.     Prior to the facts and circumstances alleged herein, Plaintiffs regularly used their property for recreational activities, including but not limited to hiking, hunting, fishing, and riding all terrain vehicles and Plaintiff Adrian Nestico was planning to start a business to capture, bottle and sell the copious and pristine spring water supply which flowed from and through the subject property.

35.     Upon information and belief, on or about December 20, 2013, Plaintiffs' neighbor was hiking along the mountain on Plaintiffs' property and detected a strong odor of gasoline and observed a puddle of gasoline on the ground and upper spring. Upon information and belief, on this same day Plaintiffs' neighbor notified local authorities the Pennsylvania Department of Environmental Protection, and the Defendants of his experience.

36.     Upon information and belief, on December 20, 2013 an Emergency Response Notification Report filed by the PEMA noted that were "Gasoline Puddles Visible" at the release site.

37.     Upon information and belief, an inspection by a Pa. DEP representative on December 21, 2013 noted that gasoline vapors were detected at various soil openings and under rocks for distances of up to 100 yards down slope from the spill site and further observed that "free product is evident at one location."

38.     Defendants through their employees, agents and/or contractors had complete control over the release site, the operations to repair site, the breach in the pipe including all excavation and backfilling operations, the characterization, containment and remediation of the gasoline spill and solid and hazardous waste generated thereby.  Upon information and

belief, the breach in the Pipeline was not located by the Defendants until December 23, 2013 at approximately 12:45 p.m.

39.     An inspection by the Pa. DEP on or about December 23, 2013 revealed a breach in the Pipeline on the Subject Property, allowing an unknown quantity of unleaded gasoline to leak from the pipeline.

40.     On or about December 23, 2013, the Defendants through their authorized representatives reported to the Plaintiffs, WNEP News and the public that "about two gallons" leaked from the pipeline, and that "no waterways were affected by the leak."

41.     Upon information and belief Defendants and their respective agents, employees and/or contractors located, excavated, and replaced the ruptured section of the pipeline between December 23 and 27, 2013, and all impacted excavated soil was left on site.

42.     On or about January 2, 2014, the Pa. DEP sent a Notice of Violation to Defendant Sunoco Logistics notifying Defendant of its Past and continuing violations of sections 307, 402 and 611 of the CSL.   (See a true and correct copy of this Notice attached hereto and incorporated herein as Exhibit "B").

43.     Upon information and belief, a representative from the Pa. DEP by e-mail dated of January 8, 2014 requested, among other items of information, that the Defendants report the volume of gas released from the pipeline prior to any backfilling of the site with the contaminated soil.   On or about January 9, 2014, Bradford Fish, an agent of Defendant Sunoco Logistic responded to the DEP's request saying that prior to any backfilling of the excavated soil, "I will also provide you with an updated estimate on the volume released per your request."

44.     Upon information and on or about January 10, 2014, Mr. Fish reported to the Pa. DEP that only approximately 10 gallons of gasoline were recovered and/or accounted for and

further represented that this or similar amounts was the estimated volume released from the pipeline site.

45.     On or about January 9, 2014, the Defendants' contractor GES collected eight (8) post excavation (PE) soil bore samples PE1-PE-8 in the bottom trench excavated around he pipeline by Defendants; these samples were submitted to analyze for the presence of known constituents of unleaded gasoline and the results from sample PE-1 showed concentrations of Benzene at 670 ug/kg, sample PE-5 detected concentrations of 1,2,4-Trimethy/benzene (TMB) at 12,000 ug/kg and 1,3,5-TMB at 3,400 ug/kg; the results for Benzene in EE-1 exceed the non-residential MSC's, and the concentrations detected for 1, 2, 4 and 1, 3, 5 TMB in PE-5 exceeded the DEP residential MSC's,

46.     All eight (8) post excavation samples found detectable significant concentrations of one or at least one or more of the following: Benzene, Tolune, Ethybenzene, total Xylenes, Isopropylbenzene, Napthalene 1, 2, 4 TMB, 1, 3, 5 TMB, total Petroleum Hydrocarbons (TPH) and Gasoline Range Organics (GRO), even though these detectable levels didn't exceed the MSC's.

47.     On or about December 23, 2013, GES collected three "grab" and three (3) "composite" soil samples from stockpiles of soil excavated by the Defendant around the pipeline; grab sample two showed concentrations of Benzene at .075 ug/kg which is close to exceeding   the residential MSC's; additionally grab samples 1 and 2 showed detectable levels of Ethylbenzene, Methylnapthalene, Propylbenzene, Napthalene Hexane, Toluene, Xylenes 1, 2, 4, TMB and 1, 3, 5 TMB, all constituents of the Defendants' gasoline that had discharged from their pipeline; "the composite" samples 2 and 3 showed detectable concentrations of Ethylbenzene, Methlnapthalene 2, Napthalene, 1, 2, 4 TMB 1, 3, 5 TMB, Xylense, GRO's, TPH's and diesel, all constituents of gasoline.

48.     On or about January 11, 2014, the Plaintiffs' neighbor, Benjamin Blascovich strong gasoline odors coming from his tap water, who then immediately notified Pa. DEP and Defendants.

49.     Mr. Blascovich obtains his water from the ground water and springs emanating from Plaintiffs' property and has a spring house located approximately 1,300 feet directly down gradient from Defendants' pipeline and the release site.

50.     On or about January 10, 2014, representatives of the Pa. DEP investigated Mr. Blasgovich's Complaints and collected water samples from his house, the spring house and from his neighbor's water supply located at 178 Nesterick Road, Coal Township, PA   17866.

51.     All of the results from these water samples detected significant concentrations of Benzene, Tolune, Ethy/benzene, Xylene 1, 2, 4 TMB and 1, 3, 5 TMB.

52.     On or about January 17, 2014, Plaintiff obtained a soil sample from he bottom of the trench that Defendants excavated to repair the pipeline.   The results showed the sample to be contaminated with Napthaline at 1.67 mg/kg, Toluene at 6.91 mg/kg, Xylenes at 23.7 mg/kg, 1, 3, 5 at 3.42 TMB mg/kg and Ethylbenzene at 3.32 mg/kg the latter two compounds being found in concentrations in excess of Pa. DEP residential specific concentrations limits MSC's.

53.     Upon information belief, an accurate estimate of volume of gasoline release from the pipeline was a material fact upon which Pa. DEP would and did rely upon in any decisions allow Defendants to backfill the contaminated dirt around the pipeline and in further approving any site characterization, containment, and remediation plans and/or work proposed by he Defendants in order to properly address the environmental consequences of the spill.

54.     Upon information and belief, the pipeline breach occurred many months prior to its discovery on December 21, 2013 and gasoline had been leaking into the soil and

groundwater on the surface and subsurface of Plaintiffs' property and surrounding properties including Pennsylvania State Game Land No. 165.

55.     Defendants intentionally misrepresented and significantly under estimated the volume of gasoline released from they pipeline.   These representations and reports made by the Defendants to the Plaintiffs, Pa. DEP, and the public were false and misleading and the Defendants knew that they were false and/or made them in reckless disregard of their truth or falsity.

56.     Defendants made these misrepresentations with the intent to deceive the Plaintiffs the Pa. DEP and the public as to the true extent and volume of the gasoline and/or petroleum products that had discharged into the environment, and as to the true threat that the discharge posed to human health the groundwater and the environment.

57.     The Plaintiffs, and upon information and belief the Pa. DEP and the public, reasonably relied upon the Defendants' intentional misrepresentations and/or material omissions in responding to the release and in characterizing and formulating and/or approving a containment and remediation plan for the volume of product discharged.

58.     Based upon Defendants' misrepresentations and/or material omissions Pa. DEP permitted the Defendants to backfill all impacted excavated soil around the release site and did not undertake immediate enforcement or appropriate action to require the Defendants to identify, contain, and remediate the plume of pollution discharged from their pipeline.

59.     This contaminated soil continued and still continues to flow, migrate leach, seep the toxic chemical constituents of all Defendants' gasoline which spilled from the pipeline into the surrounding soil, bedrock groundwater and springs during and after rainfalls, causing continual pollution to Plaintiffs' property.

60.     The many fresh water seeps/springs and other groundwater in under and

surrounding the release site is a "Water of the Commonwealth "as defined by Section 1 of t he C.S.C., 35 Pa. CSA Sec 691.1.

61.     From the time of the initial Pipeline failure until the breach was discovered and the flow was shut off, pressure from with in the Pipeline forced gasoline and/or other petroleum products to spill into and saturate the nearby soils, bedrock and groundwater.

62.     Subsequent to the release and/or releases the gasoline and/or petroleum products and/or its constituents did flow, migrate, seep, leach, and enter into the soils, bedrock and groundwater in and under the release site and surrounding area on and along Plaintiffs' property.

63.     Subsequent to the release and/or releases, the gasoline and/or its constituents continued to flow, migrate, seep, leach, and enter into Eagle Run Stream, which is a tributary of Shamokin Creek, Eagle Run is designated as a native brook trout stream and Shamokin creek is designated as a trout stocked fishery.

64.     Plaintiffs obtained a water sample from Eagle Run Stream on January 23, 2014 the results of which showed concentrations of Benzene, Toluene, Ethybenzene, and Xylene, which are all constituents of gasoline.

65.     From January 13, 2014 through and including May of, 2014 Plaintiffs collected water samples from various locations groundwater sources, and springs, located under the pipeline and others up to distances of about 300 feet east of the pipeline right of way, which showed significant levels of Benzene, Toluene, Ethylbenzene, and Xylene, which are all constituents of gasoline. In addition to this sample, Plaintiffs have obtained numerous other water samples from their neighbors showing significant concentrations for gasoline constituents evidencing that the plume of the gasoline released is traveling downhill and spreading along Plaintiffs' property and into property by Plaintiffs' neighbors and the

13

Pennsylvania State Game Commission (PA. SGC).

66.    Upon information and believe, the Defendants backfilled the contaminated excavated soil around the pipeline sometime between January 19 and January 21, 2014.

67.    On or about February 20, 2014 Pa. DEP issued a second notice of Violations to Defendant Sunoco Logistics stating continuing violations of Sections 307, 402 and 611 of the CSL (See a true and correct copy of this Notice attached hereto and incorporated herein as Exhibit "C").

68.    Upon information and belief the DEP reasonably relied on these false reports when allowing Sunoco to backfill the site with gasoline contaminated soil and when approving Sunoco's Site Characterization Plan.

69.    On or about January 21, 2014, Plaintiff Adrian Nestico and his neighbor residing at 157 Happy Hollow Road filed a formal complaint with Pa. DEP protesting that the Defendants were backfilling the contaminated dirt in and around the pipeline. (See a  true and correct copy of the Report attached hereto and incorporated herein as Exhibit D).

70.    On or about January 29, 2014, the Defendants submitted a site characterization plan and remediation plan to Pa. DEP.

71.    On or about March 19, 2014, Plaintiffs corresponded to Defendants responding to the January 29, 2014 site characterization plan pointing out deficiencies and requesting Defendants to consider additional measures to improve the plan to more effectively characterize the extent of the pollution, and to better remediate the impact it had on the environment including the soil and groundwater.

72.    Specifically Plaintiffs requested the Defendants to take the following measures:

   (a)    More extensive and strategically located soil borings to better define the extent of he migrating plume and the soil/hazardous waste generated thereby;

(b)    Complete and prompt excavation of all impacted/contaminated soil;

(c)    More expansive, frequent ant regular sampling of the groundwater in the area;

(d)    Installation of 6-10 pi piezometer/wells with a geoprobe with hollow stem capability;

(e)    Conduct a GPS assisted groundwater survey of the entire area in order to locate all potential groundwater sources that could be impacted by the spill;

(f)    Conduct a complete aquatic biology study of the impacts to Eagle Run Stream and other streams and wetlands in the area;

(g)    Vapor intrusion studies of at a minimum 157   Happy Hollow Road and 178 Nesterick Road and any other potentially impacted residences;

(See March 19, 2014 letter attached to Exhibit A attached hereto).

73.    The Defendants totally ignored Plaintiffs' suggestions and requests and refused to even discuss them with Plaintiffs or the Pa. DEP, despite numerous requests from the Plaintiffs to do so.

74.    This March 19, 2014 letter was incorporated into and resent with Plaintiffs' April 9, 2014 letter notifying Defendants of their intent to bring the above-captioned citizens. (See the March 19, 2014 letter attached to Exhibit A attached hereto).

75.    On or about May 12-23 of 2014 Defendants contractor GES conducted a soil boring investigation and extracted 28 soil boring samples around he location of he release point and down gradient along the pipeline to include an upper and lower at least five groundwater seep locations.   The laboratory results of the soil samples detected levels of the following chemical constituents: benzene, toluene, xylene, ethylene, MTBE, Napthalene, isopropyl/benzene 1, 2, 4 – TMB and 1, 3, 5 all detected in concentrations exceeding the Pa.

DEP MSC's.

76.     On or about June 27, 2014, Defendants sent to Plaintiffs two reports dated June 26, 2014 setting forth the proposed remediation of the spill site which Plaintiffs had reviewed by their own expert environmental consultants AGES, Inc. and Wetstone Solutions, Inc.

77.     On or about July 14, 2014 Plaintiffs through undersigned counsel, notified the Defendants that they considered Defendants site characterization and remediation plan, to be deficient and requested Defendants to adopt and implement the additions and recommendations set forth in the March 19, 2014 letter.   (See e-mail from undersigned counsel dated July 14, 2014 attached hereto and incorporated herein as Ex E).

78.     The Defendants have specifically have refused to excavate all of the contaminated soil from the release site, even clearly contaminated as demonstrated by the soil samples taken by the Defendants' own contractors at five (5) separate locations.

79.     The Defendants have refused to conduct a proper and detailed groundwater study of all of the groundwater sources in the area which is needed to properly characterize the extent of the pollution in order to formulate and support the adequate design of a remedial approach.   The Defendants have refused to conduct an aquatic biology study and/or a proper scientific natural resources study to properly evaluate the scope and impact of the pollution on the surrounding eco systems.

80.     Upon information and belief, all of these measures are necessary to properly characterize, contain and remediate the said and hazardous waste generated by Defendants' release of gasoline from its pipeline, and Defendants' conduct and refusal to adopt these measures will continue to result in the daily violations of RCRA, CWA and CSL which have continued since December 20, 2013 through the present.

81.     The plume of pollution and solid waste generated by the Defendant has spread

widely into large areas of the soil, bedrock, and groundwater surrounding the release which, upon information and belief, includes the Plaintiffs' property, state Game Lands No. 165 and adjacent private properties located at 157 Happy Hollow Road and Nesterick Road, Coal Township, Pennsylvania   17866.

82.     The plume of pollution and the solid and/or hazardous waste generated by the Defendants presents  or  at  the  very  least  may  present,  an  imminent  and  substantial endangerment to health or the environment.

83.     Defendants have refused to take all reasonable steps to remediate and abate the plume of the pollution including but not limited to the locations of the following:

(a)     By refusing at a minimum, to excavate all of the contaminated soil including but not limited to the soil   surrounding  soil  samples  SS-5,  SS-6, SS-23, PE-1 and PE-5.

(b)     By refusing and/or failing to conduct a thorough evaluation and/or analysis of the groundwater flow and quality to evaluate the extent of ongoing migration of the plume of pollution and contaminated groundwater;

(c)     By refusing to conduct a formal study of aquatic biology in the environment surrounding the plume of pollution;

(d)     By refusing and/or failing to conduct adequate vapor intrusion studies to evaluate the potential or benzene impact local residences, including the residences located at 157 Happy Hollow Road and 178 Nesterick Road Coal Township, Pennsylvania   17866.

(e)     By refusing and/or failing to excavate and remove all of the contaminated and/or impacted soil around the pipeline which was previously excavated and backfilled by the Defendants and/or their contractors

as part of their operations to repair the break in the pipeline.

(f)    By refusing and/or failing to provide the Plaintiffs, the Pa. DEP and the public with a full, complete and accurate assessment of the type and volume of he gasoline product(s) that were spilled from the pipeline so that a full, complete and accurate characterization and assessment can be made of the extent of he solid and/or hazardous waste can be made and the risk it posses to health and environment.

84.    The constituents of gasoline are *hazardous substances* as defined under the Hazardous Sites Cleanup Act (HSCA), 35 P.S. §§ 6021-6020.1305.

85.    The constituents of gasoline includes chemicals that are carcinogenic and toxic, including but not limited to Benzene, Toluene, Ethylbenzene, and Xylene.

86.    As a result of their activities, Sunoco has destroyed and spoiled the natural freshwater springs aquifers and groundwater underneath the Plaintiffs previously pristine property and has rendered the subject property permanently contaminated, polluted, unusable and thus, virtually valueless.

87.    As a result of their activities, Sunoco has exposed Plaintiffs' property to toxic air, including benzene vapors, which has caused the air on and surrounding the subject property, their neighbors property and the state Game Lands to become permanently contaminated, polluted, unusable, and thus, virtually valueless.

88.    As a result of Defendants' activities, the Plaintiffs have suffered various harms.

89.    Defendants have violated RCRA, CWA and CSL as set forth in Plaintiffs' Notice of Intent to sue letter to Defendants April 9, 2014 and is attached hereto as Exhibit A and incorporated by reference herein.

90.     Defendants have continued to violate the provisions of the RCRA, the CWA and CSL and the respective rules and regulations promulgated there under since Plaintiffs' Notice of intent to sue attached as Exhibit "A".

91.     Each day is a separate and distinct violation, and Defendants have been in violation on a daily basis from December 20, 2013 until the present.

92.     Plaintiffs believe and allege that, without the issuance of an injunction and  the assessment   of Civil Penalties, Defendants will continue to violate the provisions of RCRA, CWL and CLS to the further injury to the Plaintiffs, the public and will continue to or may present an imminent and substantial endangerment to health of the environment.

## COUNT I

## CITIZENS SUIT PURSUANT TO RCRA

93.     Paragraphs 1 through 92 are incorporated herein by reference as if it is fully rewritten herein.

94.     The release and discharge of gasoline and/or orther petroleum products from Defendants pipeline which has saturated leached into and flowed through the surrounding soil, rock, and groundwater has generated and disposed of a "solid waste" and/or "hazardous waste" as those terms are defined under the RCRA and its applicable regulations.

95.     The chemical constituents of the Defendants' gasoline including, but not limited to Benzene, Toluene, Ethylbenzene Xylenes are Isopropy/benzene Napthalene, 1,2,4 TMB and 1, 3, 5 TMB are highly toxic and some are carcinogenic,   and exposure to them is severely detrimental to human, animal, aquatic and plant and health and life.   These constituents are also severely toxic

and detrimental to the environment.

96.     The plume of pollution and solid hazardous waste generated by the Defendants have spread widely into large areas of the soil, bedrock and groundwater surrounding and distant from the release site which, upon information and belief, includes the Plaintiffs' property, state game lands No. 165 and adjacent private properties located at 157 Happy Hollow Road and 178 Nesterick Road, Coal Township, Pennsylvania   17866.

97.     The plume of pollution and the solid and/or hazardous waste generated by the Defendants will continue to spread and presents, or, at the very least, may present, an imminent and substantial endangerment to health or environment.

98.     Pursuant to 42 U.S.C. 6972(a)(2), this Court has jurisdiction to enforce any "permit standard regulation, condition, requirement referred   to in Paragraph (1)(A)" and "apply any appropriate civil penalties ties under Section 6928(a) o (g) of this title."   (42 U.S.C. 6928(a) and (g))".

99.     USC 6928(g) states:   "Civil Penalties – Any person who violates any requirement of this Subchapter shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each violation.   Each day of such violation shall, for purposes of this subsection constitute a separate violation."

100.     Defendants have refused to take all reasonable steps to properly and adequately characterize, contain, remediate and abate the violations of the RCRA caused by the   plume of pollution and solid/hazardous waste they generated including but not limited to, the following:

> (a)     By refusing including but not limited to all soil which to excavate all of the contaminated or impacted soil surrounds the locations of soil samples SS-5, SS-6, SS-23, PE-23, PE-1 and PE-5;
>
> (b)     By refusing and/or failing to conduct a thorough evaluation and/or analysis of the groundwater flow and quality to evaluate the extent

of ongoing migration of the plume of pollution and contaminated groundwater;

(c)    By refusing to conduct a formal study of the aquatic biology and Other natural resources in the environment surrounding the plume of pollution;

(d)    By refusing and failing to conduct adequate vapor intrusion studies to evaluate the potential of benzene impact on local residents including the residences located at 157 Happy Hollow Road and 178 Nesterick Road, Coal Township, Pennsylvania 17866.

(e)    By refusing and/or failing to excavate and remove all of the contaminated and/or impacted soil around the pipeline which was previously excavated and backfilled by the Defendants and/or contractors as part of their operations to repair the break in the pipeline;

(f)    By refusing and/or failing to provide the Plaintiffs, the Pa. DEP, and the public with a full, complete and accurate assessment of the type and volume of the gasoline products that were spilled from the pipe line so that a full, complete and accurate characterization and assessment can be made of the extent of the solid and/or hazardous waste and plume pollution can be made and the risk it poses to health and the environment.

101.    The Defendants have violated RCRA daily from December 20, 2013 through the present and into the future until they abate all violations and a civil penalty for each violation must be assessed under 42 U.S.C. 6928(g).

102.    If the Defendants are not enjoined and ordered to the correct and complete these additional remedial measures set forth in Paragraphs 72 a-g and 100 a-f above, and if civil penalties are not assessed then the solid and/or hazardous waste generated and disposed of by the Defendants will remain in the environment and the toxic chemical constituents therein will continue to leach, migrate, flow and pollute the soil and groundwater, and will and/or may continue in the future to contribute to the already imminent and substantial endangerment to health and the environment.

WHEREFORE, pursuant to 42 USC 6972 Plaintiffs pray for the following injunctive and

other relief:

(1)    A Declaration that the Defendants have violated and continue to Violate the RCRA and is corresponding regulations on a daily Basis since December 20, 2013;

(2)    A mandatory injunction enjoining and compelling the Defendants at a minimum to carry out and complete all of the additional remedial actions set forth in Paragraphs 72 and above;

(3)    Assess and order civil penalties against the Defendants under 42 USC 6928 (a) and (g); in an amount equal to $25,000 per day beginning December 20, 2013 through and including the present and into the future until all violations have been abated;

(4)    Award the Plaintiffs the costs including Attorney fees and Expert fees.

## COUNT II

## UNAUTHORIZED DISCHARGE OF POLLUTANTS

## CITIZEN'S SUIT PURSUANT TO CWA AND CLS

## CLAIMS FOR RELIEF

103.    Paragraphs 1 through 102 are incorporated herein by reference as if it is fully rewritten herein.

104.    Defendants' discharges of industrial gasoline and/or petroleum products are discharges from a point source into navigable waters of the United States within the meaning of 33 U.S.C. § 1311 and into waters of the Commonwealth within the meaning of 35 P.S. § 691.307.

105.    Defendants' discharges contain a pollutant namely gasoline and/or other petroleum products.

106.    Defendants have failed to disclose quantity and extent of these concentrations in its

report(s) to the Pa. DEP, the Plaintiffs and the public including its initial site characterization plan and all subsequently filed reports, plans and other submission to the Pa. DEP and reports to the media.

107.    Each of Defendants' discharges of gasoline and other petroleum products is a separate violation of section 301(a) of the CWA, 33 U.S.C. § 131 l(a), for each day on which it occurred since at least December 20, 2013 through the present .

108.    The results of all water sampling analyzed from December 2013 through the present show that the following constituents are present in Defendants' effluent: Benzene, Toluene, Ethylbenzene and Xxylene.

109.    Discharges of industrial wastewater must comply with permits issues under t he National Pollutant Discharge Elimination System (NPDES) a federal program established under § 402 of the Clean Water Act, 33 U.S.C. §1342.   EPA is a primary administrator of the Clean Water Act, yet EPA has delegated its authority to states under CWA §402, allowing for state implementation and administration of the CWAS.   *See* 33 U.S.C. § 1342(b).   In Pennsylvania, pursuant to §402, the Pennsylvania Department of Environmental Protection (PADEP) regulates discharges of pollutants by, *inter alia*, issuing NPDES permits.

110.    CWA § 301(a), 33 U.S.C. §1311(a), prohibits "the discharge of any pollutant" unless it is authorized by a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342. "Discharge of a pollutant" means the "addition of pollutant to navigable waters from any point source."   33 U.S.C. § 1362(14), and Congress defined navigable waters broadly as "the waters of the United States."   33. U.S.C. § 1362(7).   Pollutants include all "industrial, municipal and agricultural waste discharged into the water." § 33 U.S.C. § 1362(6).

111.    NPDES permits are the Clean Water Act's primary control on discharges of pollutants; permits must include conditions that ensure compliance with the CWA.   At minimum,

NPDES permits impose technology-based effluent limitations (i.e., numeric limits on dischares under the CWA) other more stringent conditions necessary to meet state and federal water quality standards, and monitoring and reporting requirements. *See* U.S.C. §§ 1342, 1311, 1318. Non-compliance with a NPDES permit is conclusive evidence of a violation of § 301(a)'s general prohibition on discharges. 33 U.S.C. § 1342(k).

112. At no time prior to or since December 20, 2013, did the Defendants apply for, obtain or posses a NPDES permit, and therefore all of Defendants' discharges are not authorized and are in violation of Sections 301(a) of the CWA 33 U.S.C. 1311(a) which violations have continued on a daily basis at lest from December 20, 2013 to the present.

113. Defendant have also violated sections 301, 307, 402 and 611 of he CSL 35 Pa. CSA § 691.301, 691.707, 691.402 and 691.611, on a daily basis from at least December 20, 2013 up through the present.

114. 25 Pa Code Section 91.33(b) of the Rules of Regulations states:
…a person shall immediately take or cause to be taken steps
necessary to prevent injury to property and downstream
users of the waters from pollution or a danger of
pollution and, in addition thereto, with 15 days from the incident,
shall remove from ground and from the affected waters of this
Commonwealth to the extent required by this title the residual
substances contained thereon or therein.

115. On December 20, 2013, Sunoco Logistics/Sunoco Pipeline violated Section 91.33(b) in that neither immediately took steps necessary to prevent or control the release of gasoline from the Pipeline or the resulting pollution of waters of the Commonwealth.

116. From December 20, 2013 through the present , Sunoco Logistics and/or Sunoco Pipeline violated Section 91.33(b) in that neither took the steps necessary to prevent injury to property and downstream users of the affected waters of the Commonwealth from pollution or the danger of pollution posed by the release of gasoline to the environment.

117.    From December 20, 2013 through present, Sunoco Logistics and/or Sunoco Pipeline violated Section 91.33(b) in that neither party removed the released gasoline and contaminated soil from the environment, which gasoline flowed, migrated, seeped and discharged daily into   the surrounding environment and waters of the Commonwealth.

118.    The above described violations of 91.33(b) of the Clean Streans Law warrant imposition of a civil penalty of $10,000 per day.

119.    EPA, the states, and individual citizens may each enforce CWA.   33 U.S.C. §§ 1319, 1365(b).   After 60 days have passed, citizens may sue federal district court to enforce against ongoing violations of the CWA.

120.    Citizens may file suit against any person – including a business entity – alleged to be in violation of effluent standards or limitations broadly include "any unlawful act" under § 301(a), which includes all discharges of pollutants in violation of or not allowed by a NPDES permit.

121.    In addition to declaratory and injunctive relief (available pursuant to 28 U.S.C. §§ 2201 and 2202, respectively) the CWA provides for civil penalties for violations occurring within the last five (5) years.   33 U.S.C. § 1319*d) (CWA civil penalties).   CWA § 309 authorizes up to $37,500 per day per violation for violations occurring after January 12, 2009.   *See* 33 § U.S.C. §§ 1319(d), 1365(a).

122.    Under section 605 of the CSL, 35 Pa. CSA § 691.605, a civil penalty up to $10,000 per day per violation.   Defendants have violated § 301, 307, 401, 616, 25 Pa Code § 91.33(b) of the CSL and supporting regulations on a daily basis from at least December 20, 2013 through the present and Defendants should be assessed a penalty for violating each section on a daily basis.

## PRAYER FOR RELIEF

123.   WHEREFORE, pursuant to 42 USC 1319 and 1365 Plaintiffs pray for the

following injunctive and other relief:

(1)   Declare Defendants to have violated on a daily basis from
At lest December 20, 2013 through the present and to be in continuing
 violation of §   301(a) of the CWA, and Sections 301, 307, 401,
611 of the CSL and their corresponding regulations;

(2)   Enjoin Defendants from further and continuing violations of the
CWA and CSL;

(3)   Order Defendants to take all necessary steps to comply with section 301 (a)
of   the CWA and Sections 301, 307,401, 611 of the CSL and 25
Pa Code Section 91.33;

(4)   Order Defendants to undertake and complete all remedial measures
Set forth in paragraphs 72-100 above;

(5)   Assess and order penalties against the Defendants under 33 U.S.C.
§ 1319(d) equal to $37,500 per day commencing December 20, 2013
Through the present and into the future until all violations have
Been abated;

(6)   Assess and order civil penalties against the Defendants under 35
Pa C.S.A. § 691.605   in an amount equal to $50,000 per day beginning
 December 20, 2013 through the present and into the future until all
violations have been abated;

(7)   Order Defendants to pay reasonable attorneys fees and costs including
expert fees, as provided by 33 U.S.C. § 1365(d) and 35 P.S. §
691.601(g);

(8)   Retain jurisdiction over this action to ensure compliance with the Court's
decree; and

(9)     Provide such other and further relief that the Court deems just and proper.

Respectfully submitted,

Caroselli, Beachler, McTiernan & Conboy LLC

/s/ William R. Caroselli

William R. Caroselli, Esquire
I.D. No.00452

Attorney for Plaintiffs

20 Stanwix Street, 7th floor
Pittsburgh, PA   15222
(412) 391-9860